# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

DUSTY HOPKINS, et al.,

        Plaintiffs,

vs.

KELLY GARCIA, et al.,

        Defendants.

No. C21-4010-LTS

**MEMORANDUM OPINION AND ORDER**

## I. INTRODUCTION

This case is before me on defendants' motion (Doc. 17) for summary judgment. Plaintiffs did not file a resistance. Oral argument is not necessary. *See* Local Rule 7(c).

## II. PROCEDURAL HISTORY

On February 16, 2021, the six plaintiffs, patients at the Civil Commitment Unit for Sexual Offenders (CCUSO) in Cherokee, Iowa, filed the present complaint (Doc. 11). Each plaintiff also filed a motion to proceed in forma pauperis. Docs. 1-6. In their complaint, plaintiffs state they practice a pagan religion but are not allowed the same rights as persons who practice other religions at CCUSO. Specifically, they state that: (1) following religious ceremonies they are not allowed to keep left over food (but other religions can keep leftover food); (2) they are not allowed religious texts with graphic depictions to the same extent as other religions; (3) they do not have access to a "sacred spot" for religious services nor are they allowed to light candles during their ceremonies. On September 28, 2021, I entered an order granting plaintiffs' motions to proceed in forma pauperis and allowing their claim to proceed. Doc. 11. I wrote:

> Those in the custody of the state "do not forfeit all constitutional protections by reason of their conviction and confinement in prison."

> *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (quoting *Bell v. Wolfish*, 441 U.S. 520, 545 (1979)). To determine whether a CCUSO regulation violates a patients' religious rights, courts employ the four-factor *Turner* test. *See Love v. Reed*, 216 F.3d 682, 690 (8th Cir. 2000), citing *Turner v. Safley*, 482 U.S. 78 (1987). That standard requires a determination about the institutional interest in the potentially discriminatory regulation, which is a determination I cannot make at this early stage of the case. I therefore find that plaintiffs' allegations are sufficient to survive summary dismissal. *See Thompson v. Vilsack*, 328 F. Supp. 2d 974, 979 (S.D. Iowa 2004) (setting out the appropriate standard for claims that state defendants violated plaintiffs' religious rights at CCUSO.)

Doc. 11 at 6.

Defendants filed an answer (Doc. 15) on November 23, 2021. Defendants later filed a motion for summary judgment, along with a brief, statement of material facts and an appendix. Docs. 17, 17-1, 17-2, 19. As noted above, plaintiffs have not filed a resistance.

### III. RELEVANT FACTS

Plaintiffs did not respond to defendants' statement (Doc. 17-1) of undisputed facts. "[A] failure to respond to an individual statement of material fact, with appropriate appendix citations, may constitute an admission of that fact." *See* LR 56(b); *see also* Fed. R. Civ. P. 56(e). Therefore, I will treat as admitted all the facts set forth in defendants' statement. The following facts are undisputed:

Defendant Kelly Garcia is the Director of the Department of Human Services (DHS). Defendant Cory Turner is the superintendent and defendant Brad Wittrock is the deputy superintendent of CCUSO. Turner is involved in reviewing grievances. Wittrock is involved in crafting rules. The remaining defendants hold various positions at CCUSO and were involved in the grievance process, issuing behavioral citations and making decisions related to religious ceremonies and items.

2

Plaintiffs were, at the time they filed this case, patients at CCUSO. Although they filed a single complaint, the statement of undisputed facts (Doc. 17-1) and appendix upon which it is based (Doc. 19) make clear that there is a divergent set of beliefs among the plaintiffs. Plaintiff Beckman considers himself spiritual but studies the Luciferian religion. Plaintiff Burse identifies as a practicing Luciferian.[1] Plaintiff Cook considers himself a spiritualist studying the Luciferian religion and vampirism. Plaintiff Halstead considers himself Catholic but helps with Luciferian ceremonies. Plaintiff Hopkins is a Luciferian. Plaintiff Jackson considers himself a spiritualist who studies the Luciferian religion.

There are 12 different religious groups at CCUSO that require space for ceremonies and worship: Christians, Jews, Muslims, Wiccans, Shadow of Light/Wiccans, Luciferians, Mormons, Catholics, Native Americans, Buddists, Asatrus, and Seventh Day Adventists. CCUSO uses a schedule to provide each group exclusive space and time to worship. Luciferians use the computer lab as their ceremonial space and are given exclusive use of it during their ceremonies. The plaintiffs disagree about whether they would prefer a space that is used exclusively for Luciferian purposes. Several said the computer lab was adequate, while plaintiff Hopkins stated that Luciferian law requires an exclusive space. However, Hopkins could not provide any citation for that statement. Regardless, CCUSO does not have enough space to give each religion its own exclusive space. The Luciferians do have an exclusive storage space to keep their religious items.

Another issue relates ceremonial religious items. Because CCUSO is a secure treatment facility for sex offenders, items that are dangerous are not permitted, nor are depictions of nudity. The process for CCUSO patients to request religious items is to submit a request to defendant Dinnelli, the facilities' chaplain, and she determines if an

---

[1] Although he has not filed a motion to withdraw, according to his deposition testimony, plaintiff Burse does not want to be a plaintiff in this case because he does not believe his religious freedom has been abridged.

3

item is allowed on CCUSO premises. If an item is determined to be prohibited by CCUSO, patients who have already ordered the item may return it or put it in outside storage. Luciferians have been permitted to have oils, candles and medallions. They were permitted a plastic chalice but not a metal one. The Luciferians were not allowed to order an obsidian mirror or a knife. Various plaintiffs have ordered Luciferian books that contained nudity, sex practices and bloodletting, which are prohibited by CCUSO policy. However, CCUSO has recently given patients the option of having published materials redacted, wherein CCUSO officials remove the pages/pictures/sections that are prohibited. Some plaintiffs claim that items that they have been denied were specifically for Luciferian purposes, other plaintiffs stated that they have attempted to obtain prohibited items, but those items were not specifically for religious purposes. Although at least two of the plaintiffs are interested in vampirism, they are interested in psychic vampirism and CCUSO has not prohibited their practices.

Another issue elates to food for religious ceremonies/occasions/holidays. CCUSO permits outside food to be ordered for religious occasions and gives patients four hours to celebrate individual religious occasions. However, CCUSO does not allow more food to be ordered than can be consumed during the particular occasion and does not permit residents to take leftovers to their rooms. This is because there is no safe storage space in the housing units for leftovers. There have been occasions in which CCUSO staff members allowed ceremonial food to be taken to resident rooms. However, that was a violation of CCUSO policy and CCUSO officials have reminded employees that leftover food is not allowed in patients' rooms.

Plaintiff Hopkins has been allowed to take food back to her room, has been denied the ability to take food to her room and has observed others take food to their rooms. Plaintiffs, as a Luciferian group, were denied the right to take a large quantity of food to their rooms per the written CCUSO policy. Additionally, several plaintiffs stated that Luciferian celebrations are supposed to take place over several days. Some patients, such as Jewish patients, are allowed religious food in their units as part of an ongoing religious

4

traditions/requirements. However, none of the plaintiffs could point to a similar Luciferian tradition. Additionally, those religious foods are sent sealed to Jewish patients' rooms.

No particular type of food is required for Luciferian occasions. Rather, it is an issue of having the food consecrated in accordance with Luciferian tradition. Even food with garlic is allowed – plaintiff Cook testified that it is a myth that garlic is impermissible for vampires.

## IV. SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id.* Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.*

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

5

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

## V. ANALYSIS

Initially, I note that per LR 56(c), "[i]f no timely resistance to a motion for summary judgment is filed, the motion may be granted without prior notice from the court." But even if I consider plaintiffs' claims on their merits, those claims fail.

6

"Section 1983 provides a remedy against any person who, under color of state law, deprives another of rights protected by the Constitution." *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992) (internal quotation marks omitted). The First Amendment, which applies to the states through the due process clause of the Fourteenth Amendment,[2] provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend I. "[P]rison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987).

To state a claim, plaintiffs must first demonstrate that the policy at issue substantially burdens their sincerely held religious beliefs. *See Gladson v. Iowa Dept. of Corr.*, 551 F.3d 825, 832-33 (8th Cir. 2009). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Courts employ a four-factor test to determine whether a regulation is reasonable: (1) whether there is a "valid rational connection" between the prison regulation and the government interest justifying it; (2) whether there is any alternative means for exercise of the asserted right; (3) whether an accommodation would have "a significant ripple effect" on the guards, other inmates and prison resources and (4) whether there is an alternative that fully accommodates the prisoner "at de minimis cost to valid penological interests." *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 982-83 (8th Cir. 2004).

### A. *Plaintiffs' Claims*

Plaintiffs make three claims related to their ability to practice their religion. However, and for at least two reasons, there is no evidence in the summary judgment record that defendants have actually infringed on plaintiffs' sincerely held religious

---

[2] *See Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).

7

beliefs, at least as related to the plaintiffs as a collective whole. First, there is no commonality in the religious beliefs of the plaintiffs. As noted above, only two identify as Luciferian (and one of those two wishes to withdraw from this case). Several others consider themselves spiritual and "study" the Luciferian religion. One considers himself Catholic.

Second, other than plaintiff Hopkins, the remaining plaintiffs disagree about whether and to what extent the issues alleged in the complaint violate their religious rights. For example, three plaintiffs, Halstead, Burse and Cook, did not have any issue with the use of the computer lab as the Luciferians' sacred space. Of the three plaintiffs who felt Luciferians were required to have an exclusive space, none could explain why an exclusive space is necessary. Similarly, none of the plaintiffs claimed the food that CCUSO allowed them to order for the feasts was improper. Rather, plaintiffs Hopkins, Beckman and Cook take issue with the fact that they are not allowed to keep their leftovers. Conversely, plaintiffs Halstead and Burse stated that there is no requirement about what happens to leftover food and that the only important thing is when the feast is held. Even assuming the plaintiffs made a unified claim that their sincerely held religious beliefs were violated, the balancing of the *Turner* factors clearly weighs in favor of the defendants on each claim.

The first issue I will address is plaintiffs' claim that they do not have access to a "sacred spot" for religious services. In response, defendants argue:

> CCUSO's practice of providing each group exclusive use of space for the time of worship prevents adherents from being forced to worship with adherents of other faiths. *See, e.g., Rust v. Nebraska Dep't of Corr. Servs. Religion Study Comm.*, No. 4:08-CV-3185, 2009 WL 3836544, at \*15 (D. Neb. Nov. 12, 2009) (holding that shared worship time imposed a substantial burden on adherents of the Asatrue and Theodish religions)... CCUSO defendants assert that the use of a schedule is a rational solution, balancing the needs of different religious groups and other use needs for limited space within the secure facility. Granting the Luciferians their own exclusive space would certainly encourage other faiths to make similar demands, creating the ripple effect discussed in *Turner*. Use of a schedule

> is the most reasonable alternative to meet the needs of the patients of different faiths at CCUSO.

Doc. 17-2 at 7-8. Defendants also cite my recent holding in another case that:

> [t]he court should give "great deference to the judgment and expertise of prison officials, particularly with respect to decisions that implicate institutional security." *Murphy*, 372 F.3d at 982-83.

*Tyndall v. Iowa*, No. C18-3025-LTS, 2022 WL 748492, at *7 (N.D. Iowa Mar. 11, 2022).[3]

---

[3] Although plaintiffs reference only their First Amendment rights in their complaint, defendants' motion for summary judgment analyzes plaintiffs' claims under both the First Amendment and under the Protection of Religious Exercise in Land Use and by Institutionalized Persons Act (RLUIPA). RLUIPA states:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 2 of the Civil Rights of Institutionalized Persons Act (42 U.S.C. § 1997), even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a). Regarding RLUIPA, the Eighth Circuit Court of Appeals has stated:

> Although we stated in *Murphy* that the conduct or expression must manifest a "central tenet" of the person's religious beliefs, the Supreme Court has since clarified that "RLUIPA bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion." *Cutter v. Wilkinson*, 544 U.S. 709, 725, 125 S. Ct. 2113, 2124 n. 13, 161 L. Ed. 2d 1020 (2005). "The Act defines 'religious exercise' to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" *Id.* at 715, 125 S. Ct. 2113 (emphasis added) (quoting 42 U.S.C. § 2000cc–5(7)(A)). In light of *Cutter*, we have recognized that "portions of th[e] definition [stated in *Murphy*] requiring religious beliefs to be a 'central tenet' or 'fundamental' may not apply to a RLUIPA claim." *Patel*, 515 F.3d at 813 n. 7.

*Gladson*, 551 F.3d at 832–33. Although I will analyze plaintiffs' claims only under the First Amendment, I note that the outcome of this case would be the same regardless of which standard

9

Defendants are correct. There is clearly a rational connection between CCUSO's regulation related to facility use for religious activities and the governmental interest involved. Within CCUSO, there are a multitude of religious and spiritual belief systems. It is impractical, and likely impossible, to provide exclusive worship space for each different religious belief system. Rather, CCUSO has implemented a schedule wherein each religious group has a time and location to conduct their own individual service or ceremony. Nothing in the summary judgment record suggests there is an alternative means of giving each religious group at CCUSO exclusive space to hold their rituals or ceremonies. Allowing one religion to have an exclusive worship space would have a ripple effect on CCUSO's resources. Relatedly, there is no way to grant plaintiffs' request for a separate space at a de minimis cost to CCUSO's legitimate interests. Thus, plaintiffs' first claim fails.

Similarly, the *Turner* factors weigh against allowing plaintiffs' religious texts and religious artifacts if they impact either CCUSO's therapeutic goals or the institution's safety.[4] Defendants argue:

> CCUSO is a secure treatment facility designed to treat the most difficult and dangerous sex offenders. *See* Iowa Code § 229A.1 (legislative findings that a small but extremely dangerous group of sexually violent predators exist that requires long-term care and treatment). CCUSO has a legitimate penological interest in ensuring items that can be used as weapons and materials that are inappropriate for sex offenders are kept out of the secure treatment facility… The CCUSO defendants assert a rational relationship between their process and the reasonable limitations put on Plaintiffs' requests. Plaintiffs have tealights, salt, and essential oils. The vampire ritual book is approved. If Luciferian texts that have unpermitted content or pictures, patients have the choice between returning the book, placing it in storage, or having the unpermitted content redacted.[] *Murchison v. Rogers*, 779 F.3d 882, 887-88 (8th Cir. 2015) ("prison officials have broad

---

applied. Based on the undisputed facts, defendants are using the least restrictive means of furthering the government's compelling interest.

[4] To the extent plaintiffs' claim is based in part on an allegation that they are not allowed candles, the undisputed facts state defendants have allowed plaintiffs to have candles.

> discretion to censor or restrict an inmate's receive of a publication to serve a legitimate penological interest –including the need for institutional security"). The Plaintiffs have some materials which serves an alternative to the other materials requested. If the Plaintiffs have unpermitted materials, requests for similar material will spread throughout CCUSO. CCUSO has a legitimate interest in restricting access to certain materials. *Burke v. N. Dakota Dep't of Correction & Rehab.*, 620 F. Supp. 2d 1035, 1050 (D.N.D. 2009) (finding prison had a legitimate institutional interest to restrict Hindu worshiper's use of fire and access to oils and a butter lamp).

Doc. 17-2 at 8-9.

I have previously held that CCUSO officials have a legitimate penological interest in restricting counter-therapeutic materials. *Risdal v. Smith*, No. C18-4057-LTS, 2020 WL 1536699, at *8 (N.D. Iowa Mar. 31, 2020), *aff'd*, No. 20-1752, 2020 WL 5959673 (8th Cir. July 22, 2020); *see also Taft et al., v. Loescher*, C12-4079-LTS, Doc. No. 5 (N.D. Iowa 2012) (dismissing claim where CCUSO patient complained regarding the confiscation of counter-therapeutic mail). While those previous cases were not brought in the context of religious rights, the same *Turner* test applies regardless of what aspect of the First Amendment is at issue. *See Risdal*, 2020 WL 1536699, at *9, applying *Turner* and stating, "Risdal cannot make any straight-faced argument that he is entitled to have possession of such property while confined in CCUSO. Rather, nearly every judge that has considered a case arising out of CCUSO over the last decade has stated that CCUSO has the right to deny access to counter-therapeutic material."

To the extent religious items have been prohibited because of safety concerns, such as metal chalices, knives and the obsidian mirror, there is no alternative means to allow plaintiffs to access those items. Regarding printed material, the defendants now give plaintiffs the opportunity to have those materials redacted with the counter-therapeutic materials removed. Allowing plaintiffs to have dangerous or sexually suggestive items would have a ripple effect on other patients at CCUSO, and there is no

way to allow such items that would have a de minimus impact on CCUSO's safety and therapeutic interests. Thus, plaintiffs' claim regarding access to religious items also fails.

Finally, I turn to plaintiff's claim that their religious rights have been violated related to the food they are able to access during religious ceremonies and holidays.[5] Defendants argue:

> CCUSO allows the Luciferians and other faiths the ability to order special food and have four hours for the feast. The four hours for a feast is longer than three hours found sufficient for the Iowa DOC. *Gladson v. Iowa Dep't of Corr.*, 551 F.3d 825, 834 (8th Cir. 2009) (finding that the Iowa Department of Corrections limit of three hours to celebrate the Samhain feast did not substantially burden the Wiccan practice)… The primary complaint is that the Luciferians wanted to bring excess food back to the unit to continue their feast. CCUSO believes its uniform policy of allowing four hours to feast and that patients not bring food back to the unit is reasonable and related to the need to keep order. The limit ensures that patients will have sufficient refrigerated storage to maintain food safety. The Luciferians have four hours to feast – a sufficient time to enjoy their religious rite. Plaintiffs' complaint that other religious faiths have brought small portions of food back proves the third element for Defendants – even small inconsistencies in enforcement of the policy by allowing small pieces of cake (which do not require refrigeration and can be consumed quicky) caused the ripple effect and complaints. *Murchison*, 779 F.3d at 891 (citing *Hodgson v. Fabian*, 378 Fed. Appx. 592, 594 (8th Cir. 2010) ("[S]ummary judgment is not defeated by a random misapplication of a reasonable regulation." (internal quotation marks omitted)). Plaintiffs admitted they attempted to bring much greater quantities of food back to the units.

Doc. 17-2 at 10-11.

To the extent plaintiffs' claim is based on the length of their feast, the defendants are correct that the Eighth Circuit has addressed an identical claim and found that a limit

---

[5] In their complaint plaintiffs do not describe this claim in terms of a First Amendment violation. Rather, if anything, plaintiffs' food claim is more of an equal protection allegation, specifically that other religions are given longer for feasts and are allowed to keep leftovers. However, there are no facts in the record that suggest this is true. The undisputed facts demonstrate that at various points, all CCUSO patients were allowed to keep leftovers, contravening CCUSO's policy, but CCUSO has now reaffirmed its policy against leftovers for all patients. Moreover, the facts state that this a standard amount of time – four hours – allowed for religious ceremonies.

of feast time to three hours is reasonable. *See Gladson*, 551 F.3d at 834 ("inmates have failed to offer any evidence that the ISP's grant of three hours for them to celebrate Samhain significantly inhibits or constrains their conduct or expression; meaningfully curtails their ability to express adherence to their faith; or denies them reasonable opportunities to engage in those activities that are fundamental to their religion."). Similarly, to the extent plaintiffs' claim is that the specific food they are provided is improper, there simply are no facts in the record that support that claim.

As defendants noted, the bulk of plaintiffs' claim is related to leftovers. This claim also fails under the *Turner* test. Defendants have stated a valid government reason for limiting leftovers – there is not space to store, or at least safely store, leftovers in patients' rooms or in the housing units. In their complaint, plaintiffs allege that there are places to store leftover food, but they have put no facts into the record to substantiate that claim. Again, there is no doubt that allowing this group of plaintiffs to keep leftovers, when all other CCUSO patients are prohibited from doing so, would cause a significant ripple effect in the institution. And there are no facts in the record that would suggest a de minimis cost alternative. Plaintiffs' claim related to leftover food fails.

## B. *Qualified Immunity*

Because plaintiffs' claims fail for the reasons set out above, I need not consider defendants remaining arguments. However, I will briefly note that defendants are entitled to qualified immunity on plaintiffs' request for monetary damages because they did not violate plaintiffs clearly established constitutional rights.[6]

Qualified immunity shields a government official from individual liability when his conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818

---

[6] Although plaintiffs request monetary damages, the bulk of their requested relief was injunctive. *See* Doc. 11 at 4.

(1982); *accord Davis v. Hall*, 375 F.3d 703, 711-12 (8th Cir. 2004). "The Supreme Court has generously construed qualified immunity protection to shield 'all but the plainly incompetent or those who knowingly violate the law.'" *Davis*, 375 F.3d at 711-12 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Id.* (citing *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)). To determine whether defendants are entitled to qualified immunity, courts ask (1) whether the facts alleged or shown establish a violation of a constitutional or statutory right, and (2) whether that constitutional right was clearly established as of the time of the alleged violation. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Unless the answer to both of these questions is yes, the defendants are entitled to qualified immunity. *See Burton v. St. Louis Bd. of Police Comm'rs*, 731 F.3d 784, 791 (8th Cir. 2013).

In this case, although it is beyond dispute that patients have a right to not have their sincerely held religious rights substantially burdened, no case law or statutory law that a reasonable person would have known about provided that the actions taken by these defendants substantially burdened plaintiffs' religious rights. Thus, defendants are entitled to qualified immunity.

### VI. CONCLUSION

For the reasons set forth herein, defendants' motion (Doc. 17) for summary judgment is **granted** as to all claims. Judgment **shall enter** in favor of the defendants and against plaintiffs. Because this order disposes of all claims, the Clerk of Court shall **close this case**.

14

**IT IS SO ORDERED.**

**DATED** this 29th day of March, 2023.

_____
Leonard T. Strand, Chief Judge